## Brown v. Seward Independent School District

*Rabe F. Marsh, Jr.*, for appellant.

*H. Reginald Belden*, for school district.

McWHERTER, J., August 20, 1948.—On July 14, 1947, the School Directors of the Seward Independent School District, which includes the Borough of Seward and a part of St. Clair Township in Westmoreland County, Pa., passed a resolution declaring their intention to impose certain taxes on coal, timber, etc., within the territorial limits of said school district, under and pursuant to the Act of June 25, 1947, P. L. 1145, hereinafter referred to as Act 481. At no. 48, May term, 1947, an appeal was filed in the court of quarter sessions, which, by stipulation of counsel was later abandoned as premature and for other reasons therein stated. An advertisement of the intention to pass such resolution was caused to be published by the board of school directors. On September 8, 1947, a resolution, which has been stipulated was legally publicized, was passed by the board of school

directors of said school district. The resolution appears as Exhibit "A" in this appeal and reads as follows:

"Resolution

"Adopted at a regular meeting of the Board of School Directors of the Seward Independent School District held Monday, September 8, 1947.

"Be it resolved that from and after October 15, 1947, the Seward Independent School District shall collect and does hereby assess and levy a tax as follows:

"a. A tax of ten cents (10¢) per ton on all coal mined or strip-mined.

"b. A tax of fifty cents (50¢) per ton on all loam severed or removed.

"c. A tax of fifty cents (50¢) per perch on all stone severed or removed.

"d. A tax of one cent (1¢) each on all props less than four feet long, severed or removed.

"e. A tax of ten cents (10¢) each on all props four feet or more in length, severed or removed.

"f. A tax of twenty-five cents (25¢) each on all cross-bars severed or removed.

"g. A tax of one dollar ($1.00) per thousand feet on all rough lumber and/or timber severed or removed.

"The said taxes shall be payable to E. M. Kerr, Tax Collector of the Seward Independent School District, shall become due thirty (30) days after the severance or removal of the taxable item or items, and shall be collectible by the said tax collector in the same manner in which other taxes heretofore imposed by the said School District are collectible. Such taxes shall become delinquent if not paid within the said thirty (30) day period, and penalties and interest shall be added to the said taxes in the same manner and amount as in the case of other taxes heretofore. imposed by said School District."

On December 20, 1947, an amended resolution was passed by the Board of School Directors of said Seward

Independent School District, which reads, in part, as follows:

"1. That all persons engaged in mining, strip-mining and removing coal from the ground in Seward Independent School District, and all persons engaged in severing or removing loam, stone, props, cross-bars, rough lumber, or timber from the ground in Seward Independent School District shall report and pay the tax on all such coal, loam, stone, props, cross-bars, rough lumber or timber to E. M. Kerr, Tax Collector of the Seward Independent School District, monthly on the first day of each month, for all coal mined and/or removed, and for all loam, stone, props, cross-bars, rough lumber and/or timber severed or removed from the ground in Seward Independent School District to and including the prior report date, the reports to be made on forms furnished by the said tax collector.

"2. That, in order to insure compliance with the terms of this resolution, and the payment of all taxes coming due under this resolution and the resolution of September 8, 1947, the tax collector shall have the authority to inspect and examine, either in person or by representative the books and records of any person or corporation engaged in the mining or removal of coal from the ground, or engaged in severing or removing loam, stone, props, cross-bars, rough lumber or timber from the ground in Seward Independent School District.

"3. That, in order to insure compliance with the terms of this resolution, and the payment of all taxes coming due under this resolution and the resolution of September 8, 1947, the tax collector shall have the authority to require semi-monthly reports from, and to inspect and examine, either in person or by repre-sentative, the books and records of any person or cor-poration selling, or leasing, on a royalty basis, any coal in Seward Independent School District to any person or corporation for the purpose of mining or removing

said coal, and said tax collector shall have like authority with respect to the books and records of any person selling or leasing any timber, loam or stone in Seward Independent School District to any person or corporation for the purpose of severing or removing the same.

"4. That, in order to insure compliance with the terms of this resolution, and the payment of all taxes coming due under this resolution and the resolution of September 8, 1947, the tax collector shall have the authority to require semi-monthly reports from, and to inspect and examine, either in person or by representative, the books and records of any person or corporation engaged in the business of transporting coal, loam, stone, props, cross-bars, rough lumber, or timber from the said School District for or on behalf of any person or corporation engaged in the mining or removal of coal or the severance or removal of loam, stone, props, cross-bars, rough lumber or timber, from the ground in Seward Independent School District, and/or for or on behalf of any person or corporation purchasing or acquiring coal, loam, stone, props, cross-bars, rough lumber, or timber from any person or corporation engaged in the mining or removal of coal, or the severance or removal of loam, stone, props, cross-bars, rough lumber or timber from the ground in Seward Independent School District

"5. That, in order to insure compliance with the terms of this resolution, and the payment of all taxes coming due under this resolution and the resolution of September 8, 1947, the tax collector is hereby authorized, empowered and directed to take such action as he shall deem necessary or advisable to insure payment of the tax, together with all penalties and costs of collection, including reasonable attorneys' fees.

"6. That the tax collector shall receive as compensation for the collection of all taxes and penalties imposed by the resolution of September 8, 1947, two percentum (2%) of all amounts collected under the terms and

provisions of the said resolution and of this resolution, except costs and fees hereinbefore provided.

"7. That the tax collector shall report to the Board of Directors at each regular monthly meeting the amount of all taxes and penalties collected by him on the prior report date, and shall, at the time of each report, remit to the Board of Directors the amount of all such taxes and penalties collected by him.

"8. That this resolution has been adopted under the authority vested in the Board of Directors by Act No. 481 of the 1947 Session of the General Assembly of the Commonwealth of Pennsylvania, the terms and provisions of which are hereby accepted and adopted.

"9. That the provisions of this resolution shall be severable and that it is hereby declared to be the intention of the Board of Directors that, should any portion of this resolution be declared unconstitutional or illegal, the remaining provisions of this resolution shall continue in full force and effect.

"This resolution, and the resolution of September 8, 1947, shall be and remain in full force and effect during the remainder of the present school year, to wit, until the first Monday of July 1948."

There was no publication of the intention to pass the amended resolution of December 20, 1947, neither was the same published after its adoption.

The first resolution of September 8, 1947, was and is irregular for the reason that it imposes no tax liability on any particular person, partnership or corporation. It is impossible to ascertain by reading of the resolution of September 8, 1947, what class of persons is liable to pay the tax. It does not say whether the owner of the coal, stone, loam or timber should pay the tax. It does not specify whether or not the lessee of any such coal, etc., should pay the tax. The resolution does not indicate whether the independent contractor, miner, lumberjack, owner of the heavy equipment used in so-called stripping operations or the party

ultimately removing any of these products should pay the tax. The court would have to guess.

In Arbuckle's Estate, 324 Pa. 501, 505, it was said:

" 'No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs.' " And cases therein cited.

See also Husband's Estate, 316 Pa. 361.

When the foregoing defects were pleaded the school board amended the resolution by the amendment of December 20, 1947, without advertisement. The void resolution of September 8, 1947, cannot be validated by the passage of the amended resolution of December 20, 1947, which was illegally passed.

The Seward Independent School District is an appointed body. It was stipulated and agreed that in the Commonwealth there are remaining 43 independent school districts all of the fourth class. Counsel for appellants have raised the question of the constitutionality of the act and in turn the attempted resolutions by the Seward Independent School District. Counsel relies on article 2, sec. 1 and article 3, sec. 20 of the Constitution of 1874. We fail to find any violations of the provisions of article 2, sec. 1 of the State Constitution. Article 3, sec. 20 reads as follows:

"The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

Wilson et ux. v. Philadelphia School District, 328 Pa. 225, here controls on the constitutional question. There, at page 237, it was said: "If unlimited taxing power is delegated to appointive school officials, a practice could readily grow up that would be tremendously burdensome to the taxpayers." The court there distinguished the case of Minsinger v. Rau, 236 Pa. 327. Chief Justice

Kephart wrote an exhaustive opinion on the subject of the unconstitutionality of the legislature delegating the taxing power to an appointed board. The same question is here presented.

The legislature, in passing Act No. 481, did not include first class school districts where the school directors are appointed. It would appear proper to so construe said Act No. 481 as not being intended to give to any appointive body the unrestricted right to levy taxes without limit. The act itself provides a formula, to wit, that the total taxes levied under the act shall not exceed an amount equal to the product obtained by multiplying the total assessed valuation of real estate in such political subdivision at the time of said enactment by the maximum millage of tax allowed thereon by law. The maximum millage allowed by law is 25 mills. The total assessed valuation of the real estate of the school district for 1947 was $357,675.00. 25 mills thereon would be $8,941.87. A computation of the tax levied by the school board on coal at 10 cents per ton, on loam at 50 cents per ton, on stone at 50 cents per perch, on props at one cent each less than four feet long, on props at 10 cents each exceeding four feet in length, of 25 cents each on all cross-bars, and $1 per thousand feet on all rough lumber and timber severed or removed, would result in additional revenue, by such levy, to the school district of at least $40,000 per year and possibly $50,000 per year. This is beyond the limitations imposed by the act and the resolution, in turn, is illegal.

The tax on loam and stone imposes an excessive and unreasonable burden upon persons engaged in strip mining. Appellants' Exhibit 7 shows that in order to mine by the strip mining method, a cubic yard of coal, three feet thick, would amount to one ton, it would be necessary, on the average, to remove 18 feet of stone which would amount to 6.48 perches, and the levy of 50 cents per perch would amount to $3.24 for

the overburden of stone. In turn, the average amount of loam or soil in the overburden would be nine feet thick, would weigh 5.25 tons, and at 50 cents per ton would produce revenue of $2.62 per ton on an average. Neither the overburden of stone so removed for the purpose of reaching coal, nor the overburden of loam or soil of whatsoever character is marketable. The overburden of stone and loam, together with any shale uncovered in removing the overburden, is waste and is deposited in the "spoil bank". One cubic yard of coal equals one ton. One cubic yard of loam equals 1.75 tons. One perch of stone equals 24.75 cubic feet. A computation indicates that the tax on coal and the average overburden of stone and loam would amount to $5.96, and the selling price of the coal currently, by strip mining in the school district, is $4.50 per ton. Such a tax is excessive and unreasonable as to the stone and loam. We need not here go into the question of what is a reasonable tax on marketable stone which is quarried, or on loam which is moved and sold as such. The definition of loam is broad and includes various different types of soil and clay. The tax on stone and loam, if permitted to stand, would be an excessive, burdensome and an unreasonable tax.

The court is satisfied that the appeal was signed by more than 25 percent of persons aggrieved by the resolution.

By reason of the foregoing opinion it is unnecessary to enter into a discussion of the merits of the contention that the resolution was passed in violation of article 9, sec. 1 of the Constitution of 1874.

For the foregoing reasons the appeal will be sustained.

### Decree

Now, August 20, 1948, it is ordered, adjudged and decreed that the appeal filed in the foregoing case be and the same is hereby sustained and the resolution adopted September 8, 1947, by the Seward Independent

School District, and the amendment thereto adopted by said school district, under date of December 20, 1947, are hereby declared to be null and void.